OPINION OF THE COURT
Bernard J. Fried, J.
Motion sequence Nos. 001 and 002 are combined for disposition.
Plaintiff Greenwald instituted this action complaining of his and other purported class members[1] wrongful termination from the defendant partnership, BDO Seidman, LLP[2] At issue is the validity and enforceability of an arbitration agreement contained in provision 14.8 of a partnership agreement that plaintiff and BDO entered into. On the one hand, defendants contend that the dispute arising from plaintiffs alleged wrongful termination must be referred to arbitration in accordance with the arbitration provision. Plaintiff argues that the arbitration provision allows a party to the dispute to rule on its own actions; therefore it is unenforceable because it is unconscionable and illusory. As discussed below, plaintiffs motion for a preliminary injunction is denied, defendants’ cross motion to stay this action is granted, and arbitration is ordered for the controversy.
Plaintiff Michael J. Greenwald joined defendant BDO, a national accounting firm, as a partner in 1998. A partnership agreement, entered into by the plaintiff and BDO on October 31, 2000, contains the following arbitration provision:
“14.8 Any controversy or dispute relating to this agreement or to the Partnership and its affairs shall be resolved and disposed of in accordance with this section, except that any accounting provided for in this agreement, to be conclusive, shall not be subject to this procedure, but shall be conclusive upon the *283 Partners and the Partners agree and accept to be bound by any such accounting. Any dispute or controversy shall be considered and decided by an arbitration panel consisting of two (2) members of the Board of Directors (other than the Chairman and Chief Executive Partner) selected by the Board of Directors and three (3) Partners from the Partnership’s practice offices who are not members of the Board of Directors. The members of the arbitration panel shall be mutually agreed to by the Board of Directors and the parties to the controversy or dispute, provided that no member of the panel shall be from an office in which any complaining Partner was located at the time of the filing of the complaint, nor be otherwise involved in the controversy or dispute. The arbitration panel shall be selected as soon as possible after notice to the Partnership by any Partner that such a controversy or dispute exists. The conduct of the arbitration shall be in accordance with such procedures as the Board of Directors adopts and communicates to the Partners.
The vote of a majority of the arbitration panel shall determine the resolution and disposition of any such dispute or controversy. The determination of such arbitration panel shall be conclusive and binding on all the Partners, and shall not be subject to further determination in any type of proceeding within or without the Partnership.”
In the beginning of 2004, plaintiffs employment was terminated pursuant to a “withdrawal agreement” dated February 6, 2004 which incorporated the arbitration provision of the partnership agreement. Plaintiff contends that this termination was wrongful, and instituted this proceeding to contest it, notwithstanding the arbitration provision.
It is urged that the arbitration provision is invalid and unenforceable because the provisions are substantively unconscionable[3] as well as illusory, due to the prescribed composition *284 of the arbitration panel.[4] Therefore, plaintiff submits that this dispute should be judicially resolved; or, in the alternative, if arbitration is to proceed, then any BDO partner and member of the board of directors should be disqualified from serving on the panel; or discovery should be ordered on the issue of their impartiality. Defendants, on the other hand, contend that the agreement to arbitrate is enforceable, and this action must be stayed, and arbitration ordered for the controversy. The enforceability of the BDO arbitration provision has been the subject of much litigation in various jurisdictions applying New York law, and in most of those cases, including a New York case on the subject, courts have upheld the provision.[5]
Plaintiff contends that there are essentially two reasons that the arbitration provision is invalid and unenforceable. First, because the panel is to be comprised exclusively of partners and board members, the provision allows one of the parties to the dispute to adjudicate its own cause. Second, even if the panel is *285 not considered to be the party itself, the partners and board members selected are so identified with BDO that they must be disqualified, at the outset, from participating in the arbitration. Each of these contentions are dealt with in turn.[6]
The Arbitration Panel is Not the Party to the Dispute
Plaintiff contends that the BDO arbitration provision is invalid and unenforceable because it requires that the panel be comprised exclusively of partners and board members of BDO, resulting in a situation where one of the parties to the dispute adjudicates its own cause. However, it is clear that plaintiff’s dispute regarding his termination is with BDO, the partnership, and therefore BDO is the actual party to the dispute, not the partners selected to serve as arbitrators. This was also the conclusion reached recently by the Connecticut Supreme Court, applying New York law, in a well-reasoned opinion. (Hottle v BDO Seidman, LLP, 268 Conn 694, 846 A2d 862 [2004].)
Hottle noted that while it may be true that “each individual partner is a party to the partnership agreement, it is clear that . . . the plaintiff is asserting claims against the partnership, and not against its partners in their individual capacities.” (268 Conn at 714, 846 A2d at 876.) Examining the BDO partnership agreement, the court determined that “none of the directors or other partners, acting individually, can take any action to assert the partnership’s rights under that agreement.” (268 Conn at 715, 846 A2d at 876.) It further noted that for the partnership to act requires the involvement of at least seven members of the board. Therefore, the two members of the board who would be included in the arbitration panel would not be reviewing their own action, because they do not have the power to act for the partnership.[7] Finally, partners who are not members of the board of directors cannot act on behalf of the partnership under the partnership agreement. The court *286 concluded that “because the arbitration panel will consist of individual partners who cannot, by themselves, exercise the partnership’s rights under the partnership agreement, those arbitrators do not share the same legal identity as the partnership for the purposes of the partnership agreement.”[8] (268 Conn at 716, 846 A2d at 876.) Therefore, each individual partner and member of the board who is eligible to serve on the arbitration panel cannot be considered a “party” to the action and will not be adjudicating their own action with regard to plaintiff’s termination, since the five members of the panel acting as individuals, or in unison, do not have the ability to terminate plaintiff’s employment. Thus, the BDO arbitration provision does not present a situation where one party to the dispute is also named arbitrator of the dispute.
The Arbitration Panel’s Relationship to BDO Does Not Invalidate the Provision
Plaintiff also contends that the BDO arbitration provision is invalid and unenforceable since the arbitration panel prescribed is so identified with BDO that it is considered illusory and unconscionable, and must be disqualified, at the outset, from participating in the arbitration. Plaintiff argues that the terms of the agreement are unconscionable because they unreasonably favor one party by allowing the arbitration panel to consist entirely of individuals who are partial to BDO and are the real parties in interest. Plaintiff also argues that the arbitration agreement is illusory because it allows partners and board members to rule on EDO’s actions, and therefore there is no contractual detriment to BDO.
Provision 14.8 calls for arbitration, a well-established form of alternative dispute resolution (ADR), in which the parties submit their disputes to the individual(s) designated to decide such disputes in a binding determination. Plaintiff contests the validity of the provision alleging that it selects individuals who are too identified with BDO. Plaintiff contends that all potential members of the arbitration panel have a financial interest in siding against plaintiff,[9] and would fear board action if they issued an award adverse to the partnership. Consequently, so the *287 argument runs, they are partial to BDO and may not participate in the arbitration proceedings.
It has become axiomatic that courts universally look to enforce arbitration agreements, that public policy favors and encourages arbitration, as well as the various other forms of nonjudicial dispute resolution, and that “the law [will] interfere as little as possible with the freedom of consenting parties to achieve that objective.” (Matter of Siegel [Lewis], 40 NY2d 687, 689 [1976], rearg denied 41 NY2d 901 [1977].) “Central to that freedom is the recognized right of the parties ... to name those who are to be the arbitrators . . . [and t]he parties’ reasons for the selection of particular arbitrators may in fact be the very ones which would have disqualified Judges or jurors.” (Id. at 689.) Moreover, Siegel observed that “strange as it may seem to those steeped in the proscriptions of legal and judicial ethics, a fully known relationship between an arbitrator and a party . . . will not in and of itself disqualify the designee.” (Id. at 690.) Applying these principles to the facts, Siegel upheld selection of a party’s attorney and his accountant as arbitrators, even though the attorney drafted the agreement for the party, and the named accountant was also designated as the escrowee under the agreement.
More recently, the Court has applied the standard enunciated in Siegel to uphold a contractual alternative dispute resolution provision that authorized one party’s employee (the Superintendent of the New York City Transit Authority) to make binding, final and conclusive decisions, even though the employee was personally involved in the events that gave rise to the dispute. (Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d 47 [1993]; see also Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp., 87 NY2d 927 [1996].) The First Department has relied upon the Westinghouse decision in recent cases and upheld ADR provisions, which have vested authority to decide disputes in individuals who were the employees of one of the disputants. (See e.g., Laquila Constr. v New York City Tr. Auth., 282 AD2d 331, 332 [1st Dept 2001]; Skanska Tunneling v City of New York, 247 AD2d 344 [1st Dept 1998], appeal dismissed 92 NY2d 844 [1998].) Although the ADR process reviewed in Westinghouse and its progeny was not arbitration, nevertheless, they required the mandatory submission of disputes for a binding and final resolution.
*288 Plaintiff contends that Westinghouse and the related cases are distinguishable since the partnership agreement provides that “[t]he determination of such arbitration panel shall be conclusive and binding on all the Partners, and shall not be subject to further determination in any type of proceeding within or without the Partnership.” However, defendants brought this motion to compel arbitration pursuant to CPLR article 75 which sets forth New York’s statutory scheme for arbitration, and, thus, implicated the entire rubric of article 75, including the availability of judicial review of an award, as provided by article 75. Moreover, rule 37 of EDO’s arbitration rules, which were made a part of the arbitration provision, expressly contemplates judicial review. While judicial review under article 75 may be narrower than under article 78, the EDO arbitration provision does not violate the public policy discussed in Westinghouse, since there is available “some [form of] judicial review.” (Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp., 87 NY2d 927, 930 [1996].) Indeed, this is the very scope of judicial review traditionally afforded to arbitration.
In Yonkers, the Court of Appeals applied the principles of Westinghouse to uphold an ADR clause that vested the sole authority for resolution in the chief engineer of one of the disputants, even though no standard for judicial review was explicitly provided. The Court held that it did not need to address whether the standard of review for the ADR provision in question was as provided in article 75, or some other standard. Rather, the Court held that it was sufficient that there was “some [form of] judicial review.” Moreover, the First Department has expressly held that “dispute resolution procedures” that vest authority in a party’s employee does not violate public policy when there is “as here, some independent review mechanism sufficient to satisfy minimum review standards such as those under CPLR articles 75 or 78” (Skanska Tunneling v City of New York, 247 AD2d 344, 344 [1st Dept 1998], appeal dismissed 92 NY2d 844 [1998] [emphasis added]).
The Court of Appeals has noted that:
“[a]s a general proposition, parties to an arbitration contract are completely free to agree upon the identity of the arbitrators, and New York courts have therefore regularly refused to disqualify arbitrators on grounds of conflict of interest or partiality even in cases where the contract expressly designated a single arbitrator . . . employed by *289 one of the parties.” (Yonkers at 929 [internal quotation marks and citations omitted].)
Here, the fact that it will not be the employees of EDO who are selected as the arbitrators, but the partners of EDO, does not require a different result. The arbitration provision safeguards the arbitration proceeding by requiring the panel to consist primarily of nonboard members and that no member can be from the same office as the complaining partner, nor be otherwise involved in the controversy or dispute. Additionally, since every partner of EDO may be compelled in the future to arbitrate a dispute before such a panel, this dramatically illustrates that there is certainly a reasonable expectation that the arbitration will not be unfair.
Notwithstanding Siegel, Westinghouse and similar cases, plaintiff contends that Matter of Cross & Brown Co. (Nelson) (4 AD2d 501 [1957]), decided by the First Department in 1957, controls. There, an arbitration clause that allowed the board of directors of one of the disputants to arbitrate a dispute between itself and an employee was held invalid. Citing the “well recognized principle of ‘natural justice’ . . . that a man may not be a judge in his own cause,” it was held that the board of directors of the corporate party to the contract could not serve as arbitrators, since “no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it.” (Id. at 502-503.) The Court (at 502) “brush[ed] aside any metaphysical subtleties about corporate personality” and viewed the clause as allowing one party to arbitrate its own cause. Since the board of directors had complete control of the corporation which it represents, the board was treated as the equivalent of the corporate disputant.
Plaintiff relies heavily upon Cross & Brown and contends that all potential members of the arbitration panel must be disqualified since they are partial to one side, have financial interests in siding against plaintiff in the event of an arbitration hearing, and would fear board action if they sided against the partnership. However, these arguments do not render the arbitration clause invalid, since these factors were known at the time the arbitration provision was entered into, and subsequent decisions of the Court of Appeals and the First Department have upheld ADR provisions where similar factors were present. Cross & Brown has never been overruled; however, its holding that “someone so identified with the party as to be in fact, even *290 though not in name, the party” may not serve as an arbitrator is of questionable viability. Indeed, in a recent case, the First Department described Cross & Brown as “the then-controlling precedent.” (Laquila Constr. v New York City Tr. Auth., 282 AD2d 331, 332 [1st Dept 2001] [emphasis added].)
While the principle of Cross & Brown may still apply where the arbitrator(s) selected to hear the dispute also has control over a party disputant, the majority voice on the BDO arbitration panel is delegated to nonboard member partners, from offices outside the area of the dispute. In Cross & Brown, the board of directors not only represented the corporation, it controlled it, and therefore the board could not arbitrate a dispute where it had control over one of the disputants. Such control is lacking in the instant case, where only two board members are called to serve on the arbitration panel together with three nonboard partners, and the five members that compose the panel acting as individuals, or in unison, do not have the ability to control the partnership outside of the arbitration proceeding.
Based on the foregoing, I conclude that the arbitration provision is valid and enforceable. Consequently, plaintiff is required to arbitrate this dispute.
Accordingly, it is ordered that plaintiffs motion for a preliminary injunction is denied; and it is further ordered that defendants’ cross motion to compel arbitration is granted; and it is further ordered that this action is stayed; and it is further ordered that the parties are directed to proceed with arbitration forthwith.

. At this juncture, plaintiff Greenwald is the only identified plaintiff.

. Plaintiff originally moved by an order to show cause to compel BDO to provide documents relating to the termination and to restrain the partnership from closing the voting on amendments to the partnership agreement pending the determination of plaintiff’s termination. I denied the request for a temporary restraining order, and defendants filed opposition to the preliminary injunction motion and a cross motion seeking to stay the action and compel arbitration.

. To contest a contract on the grounds that it is unconscionable, it must generally be shown that the contract was both procedurally and substantively unconscionable when made. (See e.g. Brower v Gateway 2000, 246 AD2d 246, 254 [1st Dept 1998].) As discussed in the next footnote, the events surrounding the formation of the partnership agreement do not render it procedurally unconscionable. Nonetheless, plaintiffs claim that the contract is substantively unconscionable is considered, since there are times that “the substantive ele *284 ment alone may be sufficient to render the terms of the provision at issue unenforceable.” (Id. at 254.)

. Plaintiff also contends that the partnership agreement is procedurally unconscionable since he lacked meaningful choice when he agreed to arbitrate because he was never provided a copy of the BDO partnership agreement nor was he aware of the terms until after he accepted EDO’s offer of a partnership and gave notice to his prior employer. In addition, plaintiff claims that he was not given an opportunity to reject the terms. These allegations do not render the contract procedurally unconscionable, since plaintiff, a commercially sophisticated accountant, knew or should have known the terms of the agreement before committing to it. Moreover, a partnership agreement, even if given on a “take it or leave it” basis, can be rejected, and therefore is not unconscionable. (Cfi Brower v Gateway, supra at 283 n 3.) Finally, plaintiff worked as a partner under the agreement that is being alleged to be procedurally unconscionable for some time before raising this defense, which further diminishes it as a grounds for invalidating the agreement. Thus, this contract is not procedurally unconscionable.

. The BDO arbitration provision at issue herein, or a similar one, was upheld in: Sowan v BDO Seidman, LLP (Tex Dist Ct 1999, No. DV99-2676-B); Waite v BDO Seidman (Mass Super Ct 2002, No. 01-4009-C); Jehle v BDO Seidman, LLP (Mo Cir Ct 2002, No. 012-10118); Brown v BDO Seidman (Mich Cir Ct 1992, File No. 919343-NO); Pioso v Abernathy (Wis Ct App, L.C. No. 90-CV-002739, cert denied 464 NW2d 425 [Wis 1990]); Hottle v BDO Seidman, LLP (268 Conn 694, 846 A2d 862 [2004]).
Two New York cases have considered the BDO provision: Selznick v BDO Seidman (Sup Ct, Westchester County 1995, Index No. 507/95) found the arbitration provision to be valid, and Romer v BDO Seidman (Sup Ct, Erie County 1996, Index No. 1995-7807) found the arbitration provision to be invalid.
The BDO provision was invalidated in: BDO Seidman v Miller (949 SW2d 858 [Tex App 1997]); Buhrer v BDO Seidman, LLP (2003 WL 22049503, 2003 Mass Super LEXIS 235 [Mass Super Ct, July 7, 2003]).

. The issues presented in this action are similar to those in BDO Seidman, LLP v Bloom (Sup Ct, NY County, Fried, J., Index No. 600404/2004), in which I found this same arbitration provision of BDO to be valid and enforceable, and therefore stayed defendant’s counterclaims arising from his allegedly wrongful termination and compelled their arbitration pursuant to the partnership agreement. Since many of the issues here mirror those raised in BDO Seidman v Bloom, much of that analysis is relevant and repeated. It will be helpful to note that, in this action, the partnership is one of the defendants, while in BDO Seidman v Bloom, BDO was the plaintiff.

. The only members of the board of directors who could exercise the partnership’s rights are the chairman and chief executive partner, and they are precluded by the arbitration clause from serving on the arbitration panel.

. In the present action, plaintiff named all of the 12 members of EDO’s board as defendants. That does not, of course, render them “parties” to the underlying dispute that would be subject to arbitration.

. Plaintiff contends that all panel members have a financial interest since this action seeks $50 million in compensatory damages and $100 million in *287 punitive damages; and, in addition, plaintiffs capital and undistributed earnings account, valued by BDO at over $343,000, would all need to be potentially satisfied by the other BDO partners.