970 So.2d 869 (2007)
BDO SEIDMAN, LLP, Appellant,
v.
Charles W. BEE, Appellee.
No. 4D07-2.
District Court of Appeal of Florida, Fourth District.
December 5, 2007.
Rehearing Denied January 18, 2008.
*872 Elliot H. Scherker, David A. Coulson, Elliot B. Kula and Pamela A. DeBooth of Greenberg Traurig, P.A., Miami, for appellant.
James D. Wing and Frances F. Guasch of Holland & Knight LLP, Miami, for appellee.
WARNER, J.
In a suit over retirement benefits under a partnership agreement, the trial court refused to enforce an arbitration agreement, finding that the appellee did not sign the agreement. Because the appellee relied on the agreement in filing his claim and had signed previous agreements with identical arbitration provisions, we hold that the appellee was bound by the provisions. In accordance with controlling New York law, we also hold that the composition of the arbitration panel did not make the arbitration provision unconscionable as alleged by the appellee. We reverse.
This action arises out of Charles Bee's complaint filed against his former employer, BDO Seidman, LLP ("BDO"), a national accounting firm, in which Bee claimed entitlement to retirement compensation under the firm's Amended Partnership Agreement. Bee had been a partner with the firm for over twenty years.
As a partner, Bee was a party to various partnership agreements. Bee alleged that the 2000 Partnership Agreement was the last agreement he personally signed. In 2003, as a result of a major leadership change in the firm, several top partners resigned. Several partners associated with the old regime, including Bee, entered into a separate employment agreement with BDO, referred to as the Understanding, in which the terms of compensation for Bee's remaining years with the partnership were set. The Understanding included an arbitration provision.
Thereafter, the Partnership adopted an Amended Partnership Agreement in March 2004. The provisions of this agreement and previous agreements dictated compensation paid to a partner upon retirement or termination. Its provisions applied to any partner who had not terminated his or her relationship with the partnership prior to the adoption of the agreement and superseded prior partnership agreements. Section 14.8 of the Amended Partnership Agreement, as well as the 2000 Partnership Agreement, provided for arbitration of all disputes under the agreement. It established an arbitration panel consisting exclusively of other BDO partners. However, the parties were to agree on the members:
Any dispute or controversy shall be considered and decided by an arbitration panel consisting of two (2) members of the Board of Directors (other than the Chief Executive Officer) selected by the Board of Directors and three (3) Partners from the Partnership's practice offices who are not members of the Board of Directors. The members of the arbitration panel shall be mutually agreed to by the Board of Directors and the parties to the controversy or dispute, provided that no member of the panel shall be from an office in which any complaining Partner was located at the time of the filing of the complaint, nor be otherwise involved in the controversy or dispute.
The agreement further provided that "its validity, construction, administration and effect, shall be governed by and construed in accordance with the laws of the State of New York."
Six months later the chairman of the board and chief legal counsel demanded that Bee resign and told him that BDO would not indemnify him for prior tax *873 work performed by Bee which was being challenged by the government as illegal tax planning. If he resigned, BDO would provide him the retirement benefits under the partnership. Bee, however, thought this was an attempt to deprive him of compensation under the Understanding, and he refused to resign.
BDO sent Bee a letter stating that the board of directors voted to rescind the Understanding and to terminate his partnership interest for cause. He sought arbitration of his dispute with BDO under the Understanding and recovered a sizeable award from the arbitration panel. However, the arbitration panel determined that it did not have jurisdiction of matters involving the Amended Partnership Agreement, as the two were separate agreements with different arbitration provisions.
Bee then filed the instant action against BDO seeking retirement compensation, attaching a copy of the Amended Partnership Agreement to the complaint. Bee alleged that BDO breached the Amended Partnership Agreement by expelling him without any contractually-permitted cause and in violation of the implied covenant of good faith and fair dealing. He further alleged that if BDO had not wrongfully expelled him, he would have retired no earlier than his sixtieth birthday and would have been entitled to receive retirement benefits for the rest of his life, as calculated in accordance with the terms of the Amended Partnership Agreement. He alleged that he was not bound by the arbitration agreement in the Amended Partnership Agreement, because it was unconscionable as the panel was comprised solely of BDO partners.
When BDO moved to compel arbitration, Bee claimed that he had not signed the agreement. The benefits he claimed were available under prior versions of the partnership agreement. At the hearing, however, BDO's attorney noted that the same arbitration provision was included in prior partnership agreements which Bee admits he signed. His lawyer admitted as much and told the court that "the real issue goes simply to the identity of the panel. That's the problem." Bee stipulated that he was willing to submit his claim to arbitration if neutral and disinterested arbitrators were to preside.
The trial court denied the motion to compel. The court found that Bee had not signed the Amended Partnership Agreement, and it would not require him to arbitrate under that agreement. The court did not find that the agreement was unconscionable because of panel bias based upon the agreement alone. The court would require further evidence of actual bias. Because Bee agreed to arbitrate, the court ordered arbitration before a neutral panel of arbitrators to be agreed upon by the parties or, if they could not agree, to be appointed by the court.
BDO appeals this order as a non-final appealable order. Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv) permits appeals of non-final orders determining "the entitlement of a party to arbitration." Here, the court's non-final order did not exactly determine the entitlement of a party to arbitration, as Bee agreed that he would submit to arbitration. However, the court did not enforce the arbitration clause but permitted an arbitration proceeding outside of the agreement. As the essence of the court's ruling is to deny BDO's motion to compel arbitration under the agreement, we conclude that the order is appealable under the rule.
In reviewing the denial of a motion to compel arbitration, the trial court's factual findings are reviewed under a competent, substantial evidence standard. See Fonte v. AT & T Wireless Servs., Inc., 903 *874 So.2d 1019, 1023 (Fla. 4th DCA 2005). "However, the standard of review applicable to the trial court's construction of an arbitration provision, and to its application of the law to the facts found, is de novo." Id. See also Chapman v. King Motor Co. of S. Fla., 833 So.2d 820, 821 (Fla. 4th DCA 2002) (a trial court's decision on the validity of an arbitration agreement is a matter of contract interpretation subject to de novo review). As the trial court determined that the arbitration agreement was not enforceable because Bee failed to sign the Amended Partnership Agreement, we review de novo whether this prevents the arbitration clause from being enforced.
The court must consider three elements to determine a party's entitlement to arbitration: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitral issue exists; and (3) whether the right to arbitration was waived." Marine Envtl. Partners, Inc. v. Johnson, 863 So.2d 423, 426 (Fla. 4th DCA 2003). The trial court's ruling that Bee did not agree to arbitration goes to the first element, i.e., whether there is a "valid written agreement" to arbitrate.
In this case the parties both rely on and maintain that the Federal Arbitration Act (FAA) provides the standards for determining the arbitrability of this dispute. We will therefore apply federal law in determining whether a valid arbitration agreement exists.[1]
The FAA provides:
A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2. Although the act requires that an agreement to arbitrate must be in writing, "no signature is needed to satisfy the FAA's written agreement requirement." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir.2005). However, "there must be sufficient proof that the parties actually agreed to arbitrate." Neiman v. Backer, 167 A.D.2d 403, 404, 561 N.Y.S.2d 811 (N.Y.App.Div. 1990).
As well, under state law contract principles, a contract may be binding on a party even without that party's signature where assent may be shown by the acts or performance of the party. See Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003). "Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force." Sosa v. Shearform Mfg., 784 So.2d 609, 610 (Fla. 5th DCA 2001). A non-signatory's consent to a contract can be manifested by both a party's words and actions. Am. Rock Salt *875 Co., LLC v. Norfolk S. Corp., 180 F.Supp.2d 420, 422 (W.D.N.Y.2001).
A party may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims. See Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1312 (11th Cir.2005). In Blinco, the court held that a non-signatory was bound to the arbitration clause of a contract where her claims derived from her status under the contract. Id. The court applied the doctrine of equitable estoppel, recognizing that a party should be estopped "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Id.See also HRH Constr. LLC v. Metro. Transp. Auth., 33 A.D.3d 568, 569, 823 N.Y.S.2d 140 (N.Y.App.Div.2006) ("A nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's obligation to arbitrate."); InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003) ("[E]stoppel has been limited to `cases [that] involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'").
After the Amended Partnership Agreement came into existence, Bee continued to work for BDO, thus evincing his acquiescence to the terms of the agreement. Bee sued claiming benefits under the Amended Partnership Agreement. Florida Rule of Civil Procedure 1.130(a) provides that "contracts . . . shall be incorporated in or attached to the pleading." Moreover, rule 1.130(b) provides, "Any exhibit attached to a pleading shall be considered a part thereof for all purposes." He thus claimed benefits under the agreement whose arbitration clause he seeks to repudiate in this appeal. In his complaint he did not allege that the contract was invalid; he alleged that the arbitration clause was unconscionable. Even if Bee now claims the benefits he seeks derive from the prior partnership agreement, that agreement also had an identical arbitration clause. By his own conduct in seeking benefits under the contract, he is estopped from denying the validity of the agreement. The trial court erred in determining that the arbitration agreement was invalid for want of Bee's signature.
In the trial court Bee sought to avoid arbitration before the panel as set forth in the arbitration agreement. The arbitration agreement provides that the panel shall consist of two members of the board of directors and three other partners, none of whom can be from the office of the complaining party. The parties are required to agree on the members of the panel. This very arbitration agreement has been upheld in other courts against a claim of unconscionability. See Frishberg v. BDO Seidman, L.L.P., No. 04-10481 (Minn.Cir.Ct. Jan. 5, 2005); BDO Seidman, LLP v. Bloom, 799 N.Y.S.2d 159, 2004 WL 2659987 (N.Y.Sup.Ct.2004); Greenwald v. Weisbaum, 6 Misc.3d 281, 785 N.Y.S.2d 664 (N.Y.Sup.Ct.2004); Hottle v. BDO Seidman, LLP, 268 Conn. 694, 846 A.2d 862 (2004); Jehle v. BDO Seidman, L.L.P., No. 012-10118 (Mo.Cir.Ct. May 30, 2002); Waite v. BDO Seidman, LLP, No. 01-4009-C (Mass.Super.Ct. Jan. 2, 2002); Sowan v. BDO Seidman, LLP, No. DV99-2676-B (Tex.Dist.Ct. July 12, 1999); Selznick v. BDO Seidman, Index No. 507/95 (N.Y. Sup.Ct. June 12, 1995); Brown v. BDO Seidman, No. 91-9343-NO (Mich.Cir.Ct. Dec. 18, 1992); Pioso v. Abernathy, No. 90-CV-002739 (Wis.Ct. App. Aug. 28, 1990). However, the following cases have not upheld the BDO *876 arbitration provision: Buhrer v. BDO Seidman, LLP, 2003 WL 22049503 (Mass.Super.Ct. July 07, 2003); BDO Seidman v. Miller, 949 S.W.2d 858 (Tex. App.1997); Romer v. BDO Seidman, No. 1995-7807 (N.Y.Sup.Ct. Feb. 9, 1996).
Although Bee claimed that a panel of partners of the firm would be inherently biased against him, the trial court did not hold that the arbitration agreement was unconscionable. The trial court believed that it would need more information to determine that there was particular bias against Bee. On appeal, however, Bee argues that the trial court's denial of BDO's motion to compel arbitration may be upheld because the arbitration agreement, with its panel composition, is unconscionable.
Whether an arbitration agreement is unconscionable is a question of state law. Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 264 (Fla. 2d DCA 2004). The Amended Partnership Agreement provides that it is governed by and construed in accordance with New York law. We enforce the provision pursuant to its terms, even if it would be otherwise unenforceable under Florida law. See Gilman + Ciocia, Inc. v. Wetherald, 885 So.2d 900 (Fla. 4th DCA 2004). However, New York law on unconscionability analysis is similar to Florida's analysis.
Under New York law, unconscionability requires a showing that a contract is both procedurally and substantively unconscionable when made. Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 253, 676 N.Y.S.2d 569 (N.Y.App.Div.1998); accord Bellsouth Mobility LLC v. Christopher, 819 So.2d 171, 173 (Fla. 4th DCA 2002). Bee did not raise procedural unconscionability in the trial court, and he makes no argument of procedural unconscionability as to the earlier partnership agreements. Therefore, we conclude that he has failed to show that the contract was procedurally unconscionable.
The substantive prong entails an examination of the substance of the agreement in order to determine whether the terms unreasonably favor one party:
Substantively, courts consider whether one or more key terms are unreasonably favorable to one party. There is no general test for measuring the reasonableness of a transaction but we have recently provided this guidance: "[a]n unconscionable contract [is] one which `is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms.'"
Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 138, 538 N.Y.S.2d 513, 535 N.E.2d 643 (N.Y.1989) (citations omitted). With respect to the provision of arbitrators, under New York law, "parties may not complain merely because the arbitrators named were known to be chosen with a view to a particular relationship to their nominator or to the subject-matter of the controversy." Astoria Med. Group v. Health Ins. Plan of Greater N.Y., 11 N.Y.2d 128, 136, 227 N.Y.S.2d 401, 182 N.E.2d 85 (N.Y.1962). "[I]t has long been the policy of New York courts to interfere as little as possible with the freedom of consenting parties, `[t]herefore, strange as it may seem . . . a fully known relationship between an arbitrator and a party, including one as close as employer and employee . . . will not in and of itself disqualify the designee.'" Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 82 N.Y.2d 47, 603 N.Y.S.2d 404, 623 N.E.2d 531, 534 (1993). The Westinghouse court found the designation of an employee of one of the parties as the arbitrator of disputes not to be substantively unconscionable.
*877 Relying on Westinghouse, the court in Greenwald v. Weisbaum, 6 Misc.3d 281, 785 N.Y.S.2d 664 (N.Y.Sup.Ct.2004), upheld the validity and enforceability of the BDO arbitration provision. The court noted:
The arbitration provision safeguards the arbitration proceeding by requiring the panel to consist primarily of non-Board Members and that no member can be from the same office as the complaining partner, nor be otherwise involved in the controversy or dispute. Additionally, since every partner of BDO may be compelled in the future to arbitrate a dispute before such a panel, this dramatically illustrates that there is certainly a reasonable expectation that the arbitration will not be unfair.
Id. at 670. The Connecticut Supreme Court also came to the same conclusion in Hottle v. BDO Seidman, LLP, 268 Conn. 694, 846 A.2d 862 (2004), applying New York law. Both cases distinguished an earlier case of Cross & Brown Co. v. Nelson, 4 A.D.2d 501, 167 N.Y.S.2d 573 (N.Y.App.Div.1957), on which Bee relies. We agree that Cross is distinguishable on its facts, if not completely discarded by subsequent case law. In short, New York law supports the conclusion that the arbitration provision is not substantively unconscionable.
The trial court declined to find that the panel was biased, as it needed more factual information. The trial court ruled appropriately, as an arbitration award can always be challenged based upon the "evident partiality" of the arbitrators. See § 682.13(1)(b), Fla. Stat.; 9 U.S.C. § 10(a)(2).
The trial court erred, however, in rejecting the arbitration provision contained in the agreement in favor of its own method of selecting the panel. Because there was a valid agreement containing an arbitration clause which the trial court did not find was unconscionable, BDO was entitled to enforce the arbitration clause, as written, of its contract.
We reverse and remand for the trial court to compel arbitration pursuant to the terms of the contract.
KLEIN and GROSS, JJ., concur.
NOTES
[1] When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In Global Travel Marketing, Inc. v. Shea, 908 So.2d 392, 397 (Fla.2005), the Florida Supreme Court approvingly quoted from Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), for the proposition that in interpreting arbitration provisions state law should apply if that law arose to determine the validity of contracts generally.