# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D22-2859
LT Case No. 2022-CA-001062

_____

MICHELE PAQUIN, JORDAN
JOHNSON, JUSTIN JOHNSON,
JOEL JOHNSON and JARED
JOHNSON,

      Appellants,

    v.

ANDREW CAMPBELL, LPL
FINANCIAL, LLC and THE
PRIVATE TRUST COMPANY, N.A.,
AS TRUSTEE OF THE MARLENE
MCLEOD REVOCABLE TRUST
DATED APRIL 30, 2008 AS
AMENDED OCTOBER 30, 2018,

      Appellees.

_____

Nonfinal appeal from the Circuit Court for Marion County.
Steven G. Rogers, Judge.

Thomas E. Bishop and Alexander Briggs, of Bishop & Mills,
PLLC, Jacksonville, for Appellants.

Gerald A. Giurato and Niels P. Murphy, of Murphy & Anderson,
P.A., Jacksonville, for Appellees.

January 19, 2024

WALLIS, J.

The daughter and four grandchildren of Marlene McLeod ("Appellants") appeal a nonfinal order compelling them to arbitrate their claims against McLeod's investment advisor and his employer ("Appellees"), asserting that they were not parties to the arbitration agreements entered into between Appellees and McLeod and are not equitably estopped from litigating their claims. We agree and consequently reverse and remand for further proceedings.

McLeod died in 2021 leaving Appellants as her only surviving heirs. In 2022, Appellants brought a complaint in the trial court against Appellees alleging tort claims for negligence and tortious interference with an inheritance, and a claim for declaratory relief. Appellees motioned the trial court to either compel arbitration or dismiss the complaint, alleging that McLeod's financial accounts were governed by arbitration clauses which expressly bound Appellants to arbitrate disputes with Appellees.[1] Alternatively, Appellees argued that even if they did not sign the arbitration agreements, they were subject to them under equitable estoppel because they were seeking to directly benefit from the contractual customer/advisor relationship between McLeod and Appellees. The trial court granted the motion to compel arbitration without a hearing, findings, or elaboration.

**Governing Law**

As a threshold matter on appeal, the parties disagree about what law governs the issue of whether a nonsignatory to an arbitration agreement can be compelled to arbitrate. Appellants argue that because this case sounds in tort, Florida law applies under the "significant relationships" test. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (adopting "significant relationships" standard for determining law applicable to tort claims). Appellees argue that the Federal Arbitration Act

---

[1] We reject this contention on appeal because Appellants were not parties to the contracts containing the arbitration provisions, nor can those provisions be construed as binding on Appellants.

("FAA") governs this issue because the contracts containing the arbitration clauses are agreements "evidencing a transaction involving commerce," which are governed by 9 U.S.C. section 2. Additionally, they claim that Massachusetts law "informs" the FAA because the contracts containing the arbitration provisions contained Massachusetts choice of law provisions. Both parties are mistaken.

It is well-established that state contract law governs the issue of whether a contact may be enforced against a nonparty to the contract. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (stating that state contract law, not the FAA, governs issue of whether a contract may be enforced against nonparty); *Leidel v. Coinbase, Inc.*, 729 F. App'x. 883, 886 (11th Cir. 2018) ("State law controls on the issue of whether an arbitration clause in a contract can be enforced against a nonsignatory to that contract.").

In determining whether Florida or Massachusetts contract law applies, "[t]he forum court applies its own conflict of law rule . . . to make the initial determination of the law to be applied." *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. 3d DCA 1981). In Florida, that rule involves a three-step analysis:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the [forum state] applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

*Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983); *Beattey v. Coll. Ctr. of Finger Lakes Inc.*, 613 So. 2d 52, 53 (Fla. 4th DCA 1992) (following three-step analysis in *Acme Circus*); *Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank*, 587 So. 2d 483, 485–86 (Fla. 4th DCA 1991), *approved*, 609 So. 2d 1315 (Fla. 1992) (same).

3

Although three of Appellants' four claims against Appellees sound in tort "the nature of the problem," i.e., the "specific issue at hand" is whether Appellants, as nonsignatories, can be compelled to arbitrate under equitable estoppel, which is a matter of contract law. Florida has "long adhered to the rule of lex loci contractus," which is that the law of the state where the contract was executed governs the rights and liabilities of the parties to the contract. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006); *see also Higgins v. W. Bend Mut. Ins. Co.*, 85 So. 3d 1156, 1158 (Fla. 5th DCA 2012) ("Questions bearing on the interpretation, validity, and obligation of contracts are substantive and governed by the rule of lex loci contractus."). The contracts in question were executed in Florida.

Of course, "Florida courts will generally enforce choice-of-law provisions 'unless the law of the chosen forum contravenes strong public policy.'" *Walls v. Quick & Reilly, Inc.*, 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)). However, "[a] choice of law clause, like an arbitration clause, is a contractual right that cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009). Accordingly, in the absence of a choice-of-law agreement *between the parties*, Florida contract law governs because the contracts were executed in Florida.

## Equitable Estoppel

Florida courts are required to consider three elements when ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Our focus is on the first element. We have previously recognized that, generally speaking, "one who has not agreed to be bound by an arbitration agreement cannot be compelled to arbitrate." *Liberty Commc'ns, Inc. v. MCI Telecomm. Corp.*, 733 So. 2d 571, 573 (Fla. 5th DCA 1999). "While it does not follow that an obligation to arbitrate attaches only to the signatories, ordinary contract principles determine who will be bound by such an agreement." *Id.*

4

at 574.  Non-signatories may be bound to arbitration agreements under theories of (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel.  *Id*.  Of these theories, only equitable estoppel is at issue in this case.

In the arbitration context, equitable estoppel provides that "[a] party [to a lawsuit] may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims."  *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. 4th DCA 2007).  Equitable estoppel binds a non-signatory to a contract to arbitration in two situations.  First, if a nonsignatory sues a signatory to a contract for breach of contract, the nonsignatory is estopped from denying the arbitration clause in the contract.  *See Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016) ("[W]hen a plaintiff sues under a contract to which the plaintiff is not a party . . . we will ordinarily enforce an arbitration clause contained in that contract, absent some other valid defense.").

Appellants cannot be compelled to arbitrate under this rule because they did not sue Appellees for breach or enforcement of the contracts containing the arbitration provisions; they sued in tort for negligence and tortious interference with an inheritance, based on common law elements and actions independent of the contracts.[2]  *See Leidel*, 729 F. App'x. at 888 ("Because Leidel's claims rely on obligations allegedly imposed by law and in recognition of public policy to persons who are strangers to the User Agreements, his claims neither rely on nor bear a significant relationship to those agreements."); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 162 (4th Cir. 2004) (stating homeowners association not compelled to arbitrate under estoppel theory because its claims against builder for negligence and breach of implied warranty alleged breach of duties under South Carolina common law, not under contracts containing arbitration provisions).

---

[2] We express no opinion about the sufficiency of the Complaint allegations regarding Appellant's causes of actions, which is the subject of Appellees' pending motion to dismiss.

5

Second, a nonsignatory to a contract will be estopped from denying an arbitration provision in the contract when the nonsignatory has directly benefitted from the contract. *See BDO Seidman*, 970 So. 2d at 875 (applying direct benefits theory). Direct benefits are benefits "flowing directly from the agreement." *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 859 F. App'x. 439, 447 (11th Cir. 2021) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)). In contrast, indirect benefits from a contract, which are insufficient to compel a nonsignatory to arbitrate, are those "where the nonsignatory exploits the contractual relation[ship] of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Id.* (quoting *MAG Portfolio*, 268 F.3d at 61).

Appellants cannot be compelled to arbitrate under "direct benefits" estoppel because they have not directly benefitted, and do not seek to directly benefit, from the contracts containing the arbitration provisions. *See BDO Seidman,* 970 So. 2d at 875. To the extent that Appellants rely on the relationship between Appellees and McLeod to allege negligence or interference with an expectancy, such reliance is insufficient to compel arbitration under equitable estoppel. *See Taylor Grp.,* 859 F. App'x. at 447.

Because equitable estoppel does not compel arbitration, we reverse the order on appeal and remand for further proceedings.

REVERSED and REMANDED.

EDWARDS, C.J., and LAMBERT, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

6