DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUSAN RICHARDS,**
Appellant,

v.

**BRETT SILVER** and **STARMARK FINANCIAL, LLC,**
Appellees.

No. 4D2025-1034

[April 15, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory Miller Keyser, Judge; L.T. Case No. 502024CA001604XXXAMB.

Chris Kleppin of The Kleppin Firm, P.A., Plantation, for appellant.

Thomas U. Graner of Graner Platzek & Allison, P.A., Boca Raton, for appellees.

GROSS, J.

We affirm the circuit court's order compelling arbitration. The order was based on a settlement agreement between the parties created after the filing of claims with the Equal Employment Opportunity Commission ("EEOC"). The arbitration clause in the settlement agreement was therefore *not* a predispute arbitration agreement subject to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–402.

### *Confidential Settlement Agreement*

In June 2022, Susan Richards filed a charge of discrimination with the EEOC, asserting claims of sexual harassment and age discrimination against appellees Brett Silver and Starmark Financial, LLC. Richards alleged that her complaints of discrimination were motivating factors for her termination.

After a presuit mediation, the parties executed a Confidential Settlement Agreement ("CSA") in May 2023. The CSA settled the claims

Richards asserted in the 2022 EEOC charge of discrimination, with no admission of guilt by any party.

The CSA contains an arbitration clause which states that "[a]ny claim, action or proceeding relating to or arising out of this Agreement shall be exclusively brought, addressed and resolved via binding arbitration . . . ."

Regarding payments made to Richards, the CSA provides that no K-1 tax form would be issued to her. Finally, the CSA contains a severability clause stating that if any CSA provision were determined to be illegal, invalid, or unenforceable, such a provision would be severed without affecting the validity of the remaining parts.

### *Appellees' Arbitration Filing*

In August 2023, appellees filed an arbitration demand with the American Arbitration Association ("AAA"), alleging that Richards breached the CSA's confidentiality provisions. Richards moved to remand the case to the state court system or alternatively to dismiss, arguing that the arbitration provision was unenforceable under the EFAA.

The AAA declined to proceed with the arbitration without a court order or the parties' agreement.

### *The Circuit Court Declaratory Action*

Appellees then filed the instant declaratory judgment action in the circuit court, alleging that Richards breached the CSA and seeking a declaration that "[a]ny dispute arising out of the Settlement Agreement shall be heard before the AAA."

Richards answered and brought a counterclaim against appellees for breach of contract, alleging that appellees breached the CSA by issuing her a K-1. Richards further alleged that appellees—in an effort "to retaliate and harass" her—breached the CSA "by filing a vague arbitration action claiming (falsely) that Richards breached the settlement agreement by disclosing the amount of the settlement . . . ." Richards also alleged that she had filed a new "charge of discrimination with the EEOC alleging retaliation and continued sexual harassment and will amend this Counterclaim with those claims after the administrative process has been completed."

2

### The Hearing on Arbitrability

In September 2024, the trial court held a hearing to address arbitrability and other issues. At the hearing, the parties agreed that: (1) Richards's original EEOC charge alleged sexual harassment and assault; (2) the CSA resolved all claims between the parties; (3) Richards filed a subsequent EEOC charge alleging post-settlement retaliation; and (4) there was no claim of any sexual harassment occurring after the CSA was signed.

The central legal dispute at the hearing was whether the EFAA applied to void the arbitration clause. Richards argued that the CSA's arbitration clause was a "predispute arbitration agreement" governed by the EFAA because the CSA was signed before the current disputes (the K-1 issuance and breach-of-confidentiality claims) arose, and because those disputes "relate to" her original sexual harassment dispute. Appellees countered that the CSA was a postdispute arbitration agreement outside the scope of the EFAA because the sexual harassment dispute had already arisen at the time of the making of the agreement.

### Motion to Amend Counterclaim

Richards moved to amend her counterclaim, seeking to add a retaliation claim under the Florida Civil Rights Act ("FCRA").

### Order on Appeal

One day before a hearing on the motion to amend counterclaim, the circuit court entered an omnibus order granting appellees' request for declaratory relief. The court ruled that the mandatory arbitration provision set forth in the CSA was a postdispute agreement to arbitrate and thus was not barred by the EFAA.

The court rejected Richards's argument that any of the parties' current breach-of-contract claims under the CSA were "related to" the prior sexual harassment dispute, emphasizing that there were "no claims of sexual harassment and/or assault" asserted by Richards "arising *after* the Settlement Agreement was entered into by the parties in May of 2023." The court reiterated that "the parties have had no contact or interaction since May of 2023."

The court also rejected Richards's argument that the appellees' alleged breach of the CSA would prevent them from enforcing the CSA's arbitration provision. The court found that the provision was "broad enough for the

Court to order that all disputes referenced as pending at this time . . . be brought before AAA for arbitration."

The court ordered that "the parties' present disputes of competing breach of contract claims, and any other dispute relating to or arising out of the [CSA], be brought before AAA to be addressed and resolved via binding confidential arbitration . . . ."

Later, the court denied Richards's motion to amend her counterclaim.[1]

### *The Circuit Court Did Not Err in Concluding that the CSA's Arbitration Clause Fell Outside the EFAA*

On appeal, Richards argues that the circuit court erred by compelling arbitration of a sexual harassment case governed by the EFAA. She contends that the CSA constitutes a "predispute" arbitration agreement with respect to her claims of appellees' subsequent retaliation and breaches of the settlement agreement, which "relate to" the original sexual harassment dispute and thus fall within the EFAA's protection, rendering the entire case non-arbitrable at her election.

An order on a motion to compel arbitration "presents a mixed question of law and fact." *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005). If the trial court's decision rests on findings of fact, those findings "are reviewed under a competent, substantial evidence standard." *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 873 (Fla. 4th DCA 2007). "However, the standard of review applicable to the trial court's construction of an arbitration provision, and to its application of the law to the facts found, is de novo." *Id.* (quoting *Fonte*, 903 So. 2d at 1023).

"[U]nder Florida law, a trial court's role in determining arbitrability is limited to the following inquiries: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Ridard v. Massa Inv. Grp., LLC*, 337 So. 3d 862, 865 (Fla. 3d DCA 2022) (cleaned up). "The scope of an arbitration clause is a pure matter of contract interpretation, and the determination of whether an arbitrable issue exists requires the court to examine the plain language of the arbitration agreement." *Osborne v. Drees Homes of Fla., Inc.*, 396 So. 3d 50, 53 (Fla. 5th DCA 2024). While the court determines whether the parties agreed to arbitrate a particular dispute,

---

[1] We previously dismissed that portion of the appeal directed at the order denying the motion to amend the counterclaim, as we do not have jurisdiction to review that non-final order.

the court "cannot rule on the merits of any underlying claims." *Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1453 (D. Minn. 1996).

Enacted in 2022, the federal EFAA states that, at the election of the person alleging sexual harassment or assault, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). The statute defines a "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). "In a statutory note, Congress provided that EFAA 'shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act,' which was March 3, 2022."[2] *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 407 (6th Cir. 2025) (quoting 9 U.S.C. § 401 note).

In determining when a "dispute" arises under the EFAA, "[t]he relevant question is when the parties became adverse to one another." *Id.* at 409. The term "dispute" denotes "a controversy between the parties regarding certain kinds of conduct . . . which may support claims under state and federal law." *Id.* at 408. "[W]hen a dispute arises is a fact-dependent inquiry that can be determined in the context of each case." *Id.* at 409. Evidence that the parties have become "adverse" can include "when an injured party sends the defendant a demand letter, files an administrative charge, requests arbitration, commences a lawsuit, or some other event occurs." *Id.*

"[T]he EFAA directly amends the FAA and its liberal federal policy favoring arbitration agreements to permit a party to choose to invalidate the application of an arbitration agreement to a case that contains claims that relate to a sexual harassment dispute or a sexual assault dispute." *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 150 (S.D.N.Y. 2024) (cleaned up), *opinion vacated in part on other grounds*, No. 23-CV-10753 (LAP), 2025 WL 1826583 (S.D.N.Y. July 2, 2025). "[T]he text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute (for example, a claim of unlawful retaliation for a report of sexual harassment)." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023). In other words, "where a dispute presents multiple

---

[2] Appellees make no argument that the EFAA is inapplicable here because the claim arose prior to the effective date of the Act.

claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case." *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023).

The enforcement of an arbitration clause in a postdispute settlement agreement falls outside the EFAA prohibition because, as its name indicates, such an agreement was created after the dispute at issue had arisen between the parties.

In the context of settlement agreements, it is well-settled that "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he [or she] agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984); *accord Hearns v. Sch. Bd. of Polk Cnty., Fla.*, No. 8:23-CV-985-SDM-NHA, 2024 WL 1885700, at *3 (M.D. Fla. Apr. 30, 2024). "[T]he appropriate relief in court for breach of a settlement agreement is a breach of contract claim, rather than fresh claims based on the same underlying conduct." *Benson v. Cornerstone Hospice & Palliative Care, Inc.*, No. 8:23-CV-02251-WFJ-UAM, 2023 WL 8716767, at *2 (M.D. Fla. Dec. 18, 2023).

For example, in *Benson*, the court held that post-settlement retaliation claims, which alleged that the defendant had failed to comply with the settlement agreement, suffered from a fundamental flaw because they were merely "a repackaged breach of settlement claim." *Id.* at *3. A retaliation claim requires "showing some adverse action other than breach of the settlement agreement." *Id.* (footnote omitted).

For multiple reasons, the circuit court did not err in concluding that the CSA's arbitration clause fell outside the EFAA.

First, the trial court was not required to consider Richards's state FCRA retaliation claim because it was neither pleaded nor pending before the court when the order on appeal issued. Florida law prohibits courts from awarding relief that is not framed by the pleadings. *Turgman v. Boca Woods Country Club Ass'n*, 198 So. 3d 1125, 1126 (Fla. 4th DCA 2016). Richards admitted at the hearing below that she intended to amend her counterclaim at some point in the future to add retaliation claims under the FCRA, but the amendment was eventually denied by the trial court and never became part of the operative pleadings.

Second, on the key legal issue, the circuit court correctly ruled that the EFAA did not invalidate the arbitration provision in the CSA. The dispute in this case arose no later than June 2022, when Richards filed her EEOC claim. The CSA was a postdispute agreement executed in May 2023. The

6

EFAA applies exclusively to predispute arbitration agreements, so the CSA clearly fell outside the scope of the EFAA. Because the CSA's arbitration clause was a postdispute agreement, the parties' competing claims for breach of the CSA were subject to arbitration. Importantly, no new sexual harassment or assault was alleged to have occurred after the execution of the CSA.

Third, the claim that appellees' alleged post-settlement conduct— breaching the CSA by issuing a K-1 and filing a meritless arbitration proceeding—was retaliatory does not transform a postdispute settlement agreement into a predispute one under the EFAA. The important point under that federal statute is that the parties became adverse to each other with respect to the sexual harassment dispute before they agreed to the arbitration clause in the CSA. Postsettlement disagreements with performance under the CSA fell under the agreement's arbitration clause.

Fourth, Richards's interpretation of the EFAA would allow parties to evade valid arbitration clauses in settlement agreements simply by characterizing any dispute arising out of the settlement as a new or retaliatory dispute that "relates to" the original sexual harassment. This interpretation would lead to an absurd result, frustrating Congress's intent to draw a clear distinction between predispute and postdispute arbitration agreements. Richards accepted monetary and other benefits under the CSA. Richards cannot simultaneously enforce the CSA's terms by alleging that the appellees breached, while avoiding its arbitration provision. The plain language of the EFAA was designed to prevent employers from forcing employees into arbitration before any sexual harassment dispute arises, not to invalidate arbitration clauses in valid settlement agreements negotiated with counsel after disputes emerged.

The cases cited by Richards are distinguishable because each involved arbitration provisions contained in employment agreements signed *before* any sexual harassment dispute arose.[3] Those cases thus involved classic predispute agreements falling squarely within the EFAA's coverage.

### *Neither Richards's Claim that the Appellees Breached the CSA Nor Public Policy Discharged Her Obligation to Arbitrate*

Richards next argues that the arbitration clause was unenforceable for two reasons: (1) appellees materially breached the CSA by issuing Richards

---

[3] *See, e.g.*, *Newton*, 746 F. Supp. 3d at 146; *Johnson*, 657 F. Supp. 3d at 542; *Delo*, 685 F. Supp. 3d at 179.

a K-1, thereby discharging her obligations under the CSA, including the obligation to arbitrate; and (2) the arbitration clause violates public policy "because it is contrary to 9 U.S.C. § 402" and is thus unenforceable.

Both claims are without merit.

First, appellees' alleged material breach of the CSA did not relieve Richards of the obligation to arbitrate, as the arbitration clause is severable from the remainder of the CSA. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (explaining that "an arbitration provision is severable from the remainder of the contract," so "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). Issues regarding whether appellees breached the CSA must be resolved by the arbitrator.

Second, the CSA's arbitration clause does not violate the EFAA or any other public policy. To be sure, public policy is a "generally applicable contract defense" that may be applied to invalidate an arbitration agreement without violating the FAA. *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464–65 (Fla. 2011). However, the arbitration agreement at issue here is not void as against public policy.

As explained above, the EFAA does not apply because the CSA was a postdispute settlement agreement negotiated by parties represented by counsel to resolve an existing sexual harassment claim. Moreover, none of Richards's cited cases apply because the arbitration agreement in this case has no restrictions on statutory remedies, no illegal purpose, and no formation defects. *See Shotts*, 86 So. 3d at 474 (holding an arbitration agreement unenforceable as against public policy where it waived punitive damages and incorporated American Health Lawyers Association procedural rules, thereby undermining the statutory remedies of the Nursing Home Residents' Rights Act); *Gessa v. Manor Care of Fla., Inc.*, 86 So. 3d 484, 492–93 (Fla. 2011) (invalidating an arbitration agreement that imposed a $250,000 cap on noneconomic damages and waived punitive damages, as such limitations violated public policy by frustrating statutory remedies); *Harris v. Gonzalez*, 789 So. 2d 405, 407–09 (Fla. 4th DCA 2001) (finding an agreement between a physician and a supplement distributor void as against public policy because it involved illegal kickbacks and fee-splitting in violation of the Patient Self-Referral Act; no arbitration clause was at issue); *UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 857–58 (Fla. 2d DCA 2021) (holding that an arbitration agreement could not bind minor child where the agreement was signed by a family friend who lacked apparent authority, resulting in a defect in contract formation).

8

### *Conclusion*

We have considered the other issues raised but determine that they are without merit. The order compelling arbitration is affirmed.

*Affirmed.*

CIKLIN and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely-filed motion for rehearing.**

9