COHEN, J.
Appellants, Ann Louise Higgins and Anthony P. Higgins (the “Higginses”), appeal the trial court’s final order entering summary judgment in favor of Appellee, West Bend Mutual Insurance Company (“West Bend”), in their first-party bad faith action. This case, asking which contract choice of law rule applies to first-party bad faith actions, presents a question of first impression. Determining that lex loci contractus applies to such actions, we affirm.
In 1999, while vacationing in Orlando, the Higginses were injured in an automobile accident caused by the other party. The Higginses, Minnesota residents, had an automobile insurance policy they obtained in Minnesota from West Bend, a Wisconsin corporation. The policy provided for uninsured/underinsured motorist (“UM”) coverage up to $100,000 per person and $300,000 per accident. The Hig-ginses sued in Florida the at-fault driver, who was underinsured, and West Bend. The at-fault driver settled for $100,000, the extent of the driver’s insurance policy limits, but West Bend refused to settle for the UM policy limits, disagreeing with the value of the UM claim. Following a jury trial, the Higginses were awarded $260,000. After setoff of the driver’s settlement, West Bend was ordered to pay, and subsequently paid, the UM coverage limits — $100,000.
In 2007, to recover the nearly $60,000 in excess of the UM policy limits, the Hig-ginses filed a bad faith action against West Bend, pursuant to sections 624.155 and 627.727(10), Florida Statutes (2006), arguing, inter alia, the insurer had failed to settle the claim in good faith.[1] West Bend moved for partial summary judgment, or alternatively, a case management order to determine which state law applied to the Higginses’ claim under the policy, which was without a choice of law provision. The insurer argued Minnesota law, not Florida law, governed the insurance contract and the insureds’ bad faith claim. After a hearing, the trial court ruled the law of the place where the contract was executed, or lex loci contractus, was “the proper choice-of-law rule applicable to [the Higginses’] claims.” Applying that principle, the trial court held the bad faith action was governed by Minnesota law. West Bend subsequently moved for final summary judgment or judgment on the pleadings, contending Minnesota law did not provide for first-party bad faith claims. After a hearing, the trial court agreed and entered summary judgment in West Bend’s favor.
On appeal, the Higginses argue the trial court erred in determining Minnesota law applied to the action because the correct Florida conflict of law principle to apply was the law of the place of performance, not the law of the place where the contract was executed. The standard of review for choice-of-law questions is de novo. Sosa v. Safeway Premium Fin. Co., 73 So.3d 91, 102 (Fla.2011); see Sigalas v. *1158 Lido Maritime, Inc., 776 F.2d 1512, 1516 (11th Cir.1985).
Contract choice-of-law principles apply to bad faith actions. Gov’t Emps. Ins. Co. v. Grounds, 332 So.2d 13, 14 (Fla. 1976). Questions bearing on the interpretation, validity, and obligation of contracts are substantive and governed by the rule of lex loci contractus. Goodman v. Olsen, 305 So.2d 753, 755 (Fla.1974); see Sturiano v. Brooks, 523 So.2d 1126, 1129-30 (Fla.1988) (holding automobile insurance policy coverage issues are governed by law of the place of contracting); see also Lum-bermens Mut. Cos. Co. v. August, 530 So.2d 293, 295 (Fla.1988) (determining uninsured motorist benefit issues are governed by the law of the place of contracting). The rule provides that the laws of the jurisdiction where the contract was executed govern. Lumbermens, 530 So.2d at 295.
Conversely, questions related to the manner or method of performance under a contract are determined by the law of the place of performance. Grounds, 332 So.2d at 14-15 (citing Scudder v. Union Nat’l Bank of Chicago, 91 U.S. 406, 411, 23 L.Ed. 245 (1875) (quoting Wheaton on Conflict of Laws, § 401 p., “[obligations ... are subject ... in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance.”)); see also Walling v. Christian & Craft Grocery Co., 41 Fla. 479, 27 So. 46, 49 (1899); Pan-Am. Life Ins. Co. v. Recio, 154 So.2d 197 (Fla. 3d DCA 1963) (citing Restatement (First) Conflict of Laws § 358 (1934)).
The parties in this case disagree as to whether the place of contracting or place of performance should apply to bad faith actions. The Higginses contend the actions or omissions taken by West Bend in settling the UM claim raise a performance question under the contract. Therefore, they argue the law of the place of performance, which they contend is Florida, should govern the action. West Bend asserts that the question of whether it acted in bad faith is a substantive one — concerning whether it had a duty to pay — which must be determined by the law of the place of contracting, i.e., Minnesota. Alternatively, assuming the place of performance applies, West Bend argues Minnesota law nevertheless applies.
The seminal and only Florida case that discusses the applicable choice of law principle in bad faith actions is Grounds, 332 So.2d 13. In Grounds, the supreme court determined that the breached contractual obligation — to provide the insured a good faith defense to the action — went to the insurer’s performance under the contract. The supreme court ruled:
[T]he obligation of the contract breached by petitioner was the obligation to provide respondent a good faith defense to the action. Such goes to petitioner’s performance under the contract (or lack thereof), and matters concerning performance are determined by the law of the place of performance under traditional conflict of laws principles ... In the instant case, the place of performance was Florida, where the cause of action against respondent was maintained and was defended by petitioner.
332 So.2d at 14-15 (citations omitted).[2]
The Higginses rely on Grounds, and federal cases applying it, to argue the place of performance rule applies to all bad *1159 faith actions. They argue the place of performance in this case was Florida because that is where West Bend defended, maintained, and mediated the Higginses’ original action.
There is an important distinction, however, between Grounds and this case that hinges on the fundamental difference between first- and third-party bad faith actions. A bad faith insurance action is based on the insurer’s breach of its duty to its insured to properly or promptly defend a claim, which may include the duty to make a good faith offer of settlement within the policy limits. Kelly v. Williams, 411 So.2d 902, 904 (Fla. 5th DCA 1982). A first-party bad faith claim is generally, if not exclusively, brought by the injured insured; while a third-party claim may be filed by the insured tortfeasor or the injured third party. Progressive Express Ins. Co. v. Scoma, 975 So.2d 461, 466 (Fla. 2d DCA 2007); see generally State Farm Auto. Ins. Co., v. Laforet, 658 So.2d 55, 58-59 (Fla.1995) (discussing distinction between first- and third-party bad faith actions).
Grounds involved a third-party bad faith claim brought by the insured tortfea-sor against the insurer for failing to defend in Florida the insured in good faith. See Gov’t Emps. Ins. Co. v. Grounds, 311 So.2d 164, 165 (Fla. 1st DCA 1975). Ultimately, the insurer’s conduct or performance left the insured exposed to excess liability. Significantly, however, the present case involves a first-party claim brought by the injured insureds to obtain UM benefits due to them under their policy. In settling the UM claim, West Bend operated under the terms of its contract with the Higginses, irrespective of location, and any breach stemming from their conduct presents an issue more akin to coverage. Because West Bend’s refusal to tender UM benefits limits presents a substantive question, rather than a performance-based one, the law to be applied was the law of Minnesota, where the contract was executed.[3]
Even if the law of the place of performance applies because the refusal to settle concerns a performance question, the insurer’s performance (or lack thereof) was due in Minnesota, not Florida. The Hig-ginses argue the insurer’s performance of its obligations to settle under the contract in good faith was due in Florida, where the original action was brought, defended, negotiated, mediated, and tried. They point out that West Bend employed local counsel in Florida, the settlement negotiations failed in Florida, and the UM policy limits were eventually delivered to the Higginses’ counsel in Florida. However, as previously noted, the conduct that gave rise to the bad faith action was West Bend’s failure to pay the desired UM benefits to the Hig-ginses, who were Minnesota residents. Payment was due to them in Minnesota, not Florida.[4]
Additionally, this Court is required to consider the “interest” factors set forth in the Restatement (Second) of Conflict of *1160 Laws, section. 6 (1971), to determine which state’s interest is most significant. Aetna Cas. & Sur. Co. v. Huntington Nat’l Bank, 587 So.2d 483, 486 (Fla. 4th DCA 1991); see also Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 n. 1 (Fla.1980) (stating the section 6 factors are important choice-of-law considerations “in all areas of law”).[5] Florida has no interest in a bad faith action between a foreign driver and foreign corporation. To the contrary, Florida has an interest in the stability of contractual arrangements. See Sturiano, 523 So.2d at 1129-30 (“[p]arties have a right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts.”).
Accordingly, the decision of the trial court is affirmed. West Bend’s motion for attorney’s fees under section 768.79, Florida Statutes (2007), is denied. Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So.3d 73, 77 (Fla.2012).
AFFIRMED.
ORFINGER, C.J. and EVANDER, J., concur.

. On certiorari review, this Court rendered a decision from an order relating to discovery in the bad faith action. See West Bend Mut. Ins. Co. v. Higgins, 9 So.3d 655 (Fla. 5th DCA 2009).

. The performance rule in Grounds has been characterized as "the exception rather than the rule,” and criticized as "wayward.” See Michael S. Finch, Choice-of-Law Problems in Florida Courts: A Retrospective on the Restatement (Second), 24 Stetson L.Rev. 653, 714 (1995); Harold P. Southerland, Conflict of Laws in Florida: The Desirability of Extending *1159 the Second Restatement Approach to Cases in Contract, 21 Nova L.Rev. 777, 860 (1997). Nevertheless, it remains Florida's choice-of-law rule for questions concerning performance of a contract.

. The conclusion that the refusal to settle relates to the substance of an insurer’s duty under a contract, rather than the performance of it, was also reached in at least one other jurisdiction applying conflict of laws similar to Florida to a first-party bad faith action. See Moses v. Halstead, 581 F.3d 1248 (10th Cir.2009) (applying Kansas contract conflict of laws to first-party bad faith action).

. [I]f no place of performance is specified, an insurer must make payment in the state where the insured is located.
... [T]he fact that an automobile insurance policy contemplated operation of the car in any state does not make the place *1160 where the accident occurred the place of performance so as to render it subject to the law of that place; at least, where the insurer’s only obligation is to indemnify the insured, rather than to come into court and defend the insured.
Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 24:13 (2011) (footnotes omitted) (emphasis added).

. The choice-of-law interest factors to be considered are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Bishop, 389 So.2d at 1001 n. 1 (citing Restatement (Second) of Conflict of Laws, § 6 (1971)).