DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ARLENE WILLIAMS-PARIS,**
Appellant,

v.

**APRIL NELLE JOSEPH, PRISCILLA PARIS-AUSTIN,
THEODORE PARIS,** and **SAMUEL PARIS,**
Appellees.

No. 4D20-1760

[November 17, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 50-2019-CP-002796-XXXX-SB.

Robert J. Hauser, John J. Pankauski and Jason D. Lazarus of Pankauski Hauser Lazarus, PLLC, West Palm Beach, for appellant.

Ellen S. Morris of Elder Law Associates, P.A., Boca Raton, for appellees.

ON MOTION FOR REHEARING, REHEARING EN BANC,
AND FOR CERTIFICATION

CONNER, C.J.

We deny appellant's motion for rehearing, rehearing en banc, and for certification, but we withdraw our opinion dated September 1, 2021 and issue the following in its place.

Arlene Williams-Paris ("the Wife") appeals several probate court orders determining that she waived her right to inherit as a spouse by signing a prenuptial agreement. The Wife raises multiple issues on appeal. We write to address only two of the issues, affirming as to one issue and reversing as to the other. We affirm the remaining issues on appeal without discussion.

*Background*

This case involves the enforceability and scope of a prenuptial agreement entered into hours before the Wife and Calvin Paris ("the decedent") got married. The couple lived together in the decedent's home for approximately five years before the wedding and continued to do so afterwards.

Approximately a year before the marriage, the decedent told the Wife that "if we get married, I would like you to get a prenup." Wife responded that she did not want to pay for a prenuptial agreement, and according to the Wife, the issue was never brought up again until their wedding day. In June 2015, the decedent proposed that the couple get married the following month when his family would be vacationing in Martha's Vineyard, Massachusetts where he owned a second home. The Wife agreed and made the arrangements with a month's notice. At the time the parties married, the decedent was 83 years old, and the Wife was 58 years old. Both had been married before.

On the day of the wedding, the decedent woke the Wife at 7:00 a.m. demanding her to find a prenuptial agreement online and sign it. When she expressed her dismay, the decedent refused to marry her unless she signed one, explaining that she was to be his fifth wife and a prenuptial agreement was necessary in the event of divorce. At that point, the family members and guests were all in Martha's Vineyard for the wedding. Feeling pressured by the significant potential embarrassment of canceling the wedding, the Wife reluctantly followed the decedent downstairs to the small office in the home, where the decedent closed the door and instructed her to search the word "prenup" online. The Wife then selected a website offering legal forms online using a digital program to create an agreement by filling in responses to prompts. Most of the information responding to the prompts was supplied by the decedent. The form agreement could not be read until all of the questions asked in the prompts were completed. After the prompts were completed, including ones providing their financial information for the exhibits to the agreement, the Wife printed the prenuptial agreement. The decedent then drove the Wife to a notary nearby where they signed the agreement in the notary's presence. After the agreement was signed, the Wife rushed to get ready for the marriage ceremony, which occurred at 4:00 p.m. that day.

Approximately four years after the marriage, the decedent passed away intestate while still married to the Wife. Thereupon, the Wife petitioned the probate court to: (1) invalidate the prenuptial agreement; (2) declare the residence described in paragraph 2 of the agreement to be the

decedent's homestead subject to her election to take a one-half interest; and (3) award her intestate share and elective share of the estate as spouse. The petition argued that the prenuptial agreement was invalid based on fraud, deceit, duress, coercion, misrepresentation, and overreaching since the decedent never explained that it applied in the event of death ("count I"), and because it contained unfair or unreasonable provisions ("count II"). Additionally, she petitioned for rescission of the agreement based on her unilateral mistake ("count III"). The petition was served on the appellees, the decedent's children ("the Children").

Subsequently, the Wife moved the probate court for instructions and determination of whether Massachusetts or Florida law governed the enforceability of the prenuptial agreement. As discussed more fully in the analysis section below, the probate court determined Florida law governed the issue of the agreement's validity.

The Children then moved for summary judgment, arguing that the prenuptial agreement had a specific provision pertaining to a spouse's death and therefore discounted Wife's argument that it was only effective in the event of divorce. Additionally, in response to the Wife's contention that the decedent did not fully disclose his assets prior to the agreement being signed or in the exhibits attached to the agreement, the Children argued that full disclosure was not required under Florida law when the agreement's validity is contested in a probate proceeding. The Children further argued the Wife knew what she was signing and was not coerced into signing, as verified by the notary's affidavit filed in support of the motion stating that the notary did not indicate that anything unusual occurred when the prenuptial agreement was signed. The Wife filed a response and counter affidavit to the motion for summary judgment.

The probate court granted the Children summary judgment on the Wife's coercion and duress arguments. However, the probate court denied the Children summary judgment on the Wife's unilateral mistake argument, ruling material disputed facts remained as to whether the decedent represented the agreement was to apply only in the event of divorce and not death.

After a nonjury trial on the disputed issue of misrepresentation and unilateral mistake, the probate court denied the Wife's petition to invalidate the prenuptial agreement on those issues. The Wife then gave notice of appeal.

*Appellate Analysis*

*Choice of Law Issue*

The Wife argues that because the prenuptial agreement was signed by both parties in Massachusetts, the probate court should have applied the choice of law rule of *lex loci contractus* in determining the agreement's validity. She further contends that the rule's exceptions do not apply to the agreement. The rule "specifies that the law of the jurisdiction where the contract was executed should control." *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). The Children argue that the public policy exception to the *lex loci contractus* rule precludes applying Massachusetts law to determine the agreement's validity.

"The standard of review for choice-of-law questions is de novo." *Higgins v. W. Bend Mut. Ins. Co.,* 85 So. 3d 1156, 1157 (Fla. 5th DCA 2012) (citing *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 102 (Fla. 2011)).

As our supreme court has explained, "we apply different choice of law rules to different areas of the law." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). "[I]n determining which state's law applies to contracts, we have long adhered to the rule of *lex loci contractus.*" *Id.* However, the rules of comity may be departed from in certain cases "for the purpose of necessary protection of our own citizens, or of enforcing some paramount rule of public policy." *Id.* at 1164 (quoting *Herron v. Passailaigue*, 110 So. 539, 542 (Fla. 1926); *see also In re Estate of Nicole Santos* ("*Santos*"), 648 So. 2d 277, 281 (Fla. 4th DCA 1995) ("We agree that Florida courts may depart from the rule of comity where necessary to protect its citizens or to enforce some paramount rules of public policy."). Our supreme court has made clear that what has become known as the public policy exception to the rule of *lex loci contractus* "requires *both* a Florida citizen in need of protection *and* a paramount Florida public policy." *Roach*, 945 So. 2d at 1165.

In this case, the probate court determined that Florida law controlled the issue of the agreement's validity. The probate court acknowledged that Florida follows the *lex loci contractus* rule but noted that in *Gillen v. United Services Auto. Ass'n*, 300 So. 2d 3 (Fla. 1974), our supreme court recognized a public policy exception to the rule. There, the court applied Florida law to an insurance contract signed in New Hampshire because the insured vehicle and the insured remained in Florida. *Id.* at 6-7.

In deciding that the public policy exception applied in this case, the probate court reasoned that cases upon which the children relied – *Gordon*

4

*v. Russell*, 561 So. 2d 603 (Fla. 3d DCA 1990), and *Gustafson v. Jensen*, 515 So. 2d 1298 (Fla. 3d DCA 1987) – purportedly held that Florida law applied in determining the prenuptial agreements' validity because the parties in those cases had meager connections with the jurisdictions in which the agreements were executed. The Wife contended that *Roach* effectively abrogated *Gillen*, *Gustafson*, and *Gordon*, and that the more recent cases of *Ziegler v. Natera*, 279 So. 3d 1240 (Fla. 3d DCA 2019) and *Santos*, 648 So. 2d 277, reaffirmed that the *lex loci contractus* rule controlled. The probate court decided that reliance on *Ziegler* and *Santos* was "unavailing" and that *Roach* did not totally abrogate *Gillen*, *Gustafson*, and *Gordon*. The probate court also felt this case's facts were similar to *Gustafson*. Additionally, the probate court agreed with Judge Warner's dissent in *Santos* that the public policy exception should apply more broadly to marital agreements than to insurance agreements because protecting parties in marital agreements is a particularly important public policy. The probate court then determined that the public policy exception to *lex loci contractus* applied to the agreement. In the alternative, the probate court departed from the *lex loci contractus* rule, followed the significant relationship test, and concluded that Florida law applied to determine the agreement's validity in this case because the Wife has no connection to Massachusetts other than the fact that she signed the agreement and married the decedent there.

We agree with the probate court that *Santos* is "unavailing" because this case's facts are significantly different from *Santos*' facts. In *Santos*, the parties were Puerto Rico residents. *Santos*, 648 So. 2d at 278. While in Puerto Rico, they executed a prenuptial agreement and were married. *Id.* After the marriage, the parties continued to reside in Puerto Rico for over ten years before moving to Florida. *Id.* After returning to Puerto Rico to reside, the decedent executed a will and once again the parties moved to Florida where decedent died. *Id.* at 278–79. Finding that the rule of *lex loci contractus* applied, the majority held that the trial court properly applied Puerto Rican law to the prenuptial agreement. *Id.* at 280–81. However, the majority also concluded that the public policy exception to the rule would apply to homestead property. *Id.* at 282. The majority remanded the case to determine whether the decedent's Florida home was homestead property. *Id.*

In comparison, in the instant case, the parties never lived together as a married couple in Massachusetts and the record does not reflect any other marital documents were signed in Massachusetts. Except for the homestead property, there was a much more compelling reason to apply *lex loci contractus* in *Santos* than in the situation under review here.

5

It is debatable whether *Roach* abrogated *Gillen, Gustafson,* and *Gordon.* We understand *Roach*'s holdings to be: (1) "[t]he public policy exception to the *lex loci contractus* rule is narrow;" and (2) the exception "applies only when necessary to protect 'our own citizens,' not visitors or even temporary residents, and then only when necessary to promote a paramount public policy of this state." *Roach*, 945 So. 2d at 1169 (citation omitted). However, we need not engage in the abrogation debate because we affirm the probate court's application of Florida law because it reached the right result, even though it may have erred in its reasoning. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.").

A key asset in the litigation below was the decedent's homestead. "A citizen's right to homestead protection under our constitution is considered a paramount rule of public policy that would justify our departure from the otherwise applicable rule of comity." *Santos*, 648 So. 2d at 282. Homestead protection extends not only to spouses, but also to heirs. *Snyder v. Davis*, 699 So. 2d 999, 1002 (Fla. 1997) ("As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law." (quoting *Pub. Health Tr. v. Lopez*, 531 So. 2d 946, 948 (Fla. 1988))). One of the key disputes below and on appeal is whether the Wife waived her interests in the decedent's homestead in the prenuptial agreement.

In the probate proceeding below, the parties litigated the application of section 732.702(2), Florida Statutes (2019), a provision of Florida's Probate Code, which provides:

> Each spouse shall make a fair disclosure to the other of that spouse's estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.

§ 732.702(2), Fla. Stat. (2019). The Wife sought to apply Massachusetts law to the agreement because Massachusetts law required full financial disclosure for marital agreements entered into both before and after marriage. The Children sought to apply section 732.702(2) because no

financial disclosure is required to validate a marital agreement executed before marriage.[1]

Because (1) the Wife and the Children, one of whom is a Florida resident, both stood to benefit from the decedent's homestead; (2) Florida has a strong public policy for homestead protection; and (3) Florida has specific statutes addressing the requirements for waiver of homestead protection, we affirm the probate court's decision to apply Florida law, rather than Massachusetts law, to the prenuptial agreement's validity.

---

[1] Below and on appeal, neither party argued the applicability of section 732.702(1), Florida Statutes (2019), which provides in part:

> (1) *The rights of a surviving spouse to* an elective share, intestate share, pretermitted share, *homestead*, exempt property, family allowance, and preference in appointment as personal representative of an intestate estate or any of those rights, *may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party in the presence of two subscribing witnesses.*

§ 732.702(1), Fla. Stat. (2019) (emphases added). The application of section 732.702(1) appears significant in this case because the prenuptial agreement was signed only by the two parties and a notary public. Because the applicability of section 732.702(1) was not argued below or in the briefs, we do not apply it to our analysis.

In compliance with a focus order we issued requesting that the parties be prepared to address the applicability of section 732.702(1) at oral argument, the parties made certain arguments. We disagree with the arguments presented by both sides at oral argument that the requirement of two subscribing witnesses was met in this case. *See McKoy v. DeSilvio*, 974 So. 2d 539, 540 (Fla. 2d DCA 2008) (determining that the notary did not count as one of two subscribing witnesses required to transfer real property via quitclaim deed, where notary did not sign deed as a subscribing witness); *Am. Gen. Home Equity, Inc. v. Countrywide Home Loans, Inc.*, 769 So. 2d 508, 509 (Fla. 5th DCA 2000) (determining that "nothing in the notary's affidavit . . . establishes or raises a question of fact that he was the second subscribing witness"); *Santos v. Bogh*, 334 So. 2d 833, 833 (Fla. 3d DCA 1976) (rejecting the argument that the notary's acknowledgment should be regarded as that of a second subscribing witness); *see also Witness*, Black's Law Dictionary (11th ed. 2019) (defining a "subscribing witness" as "[s]omeone who witnesses the signatures on an instrument and signs at the end of the instrument to that effect"). We found no case law supporting the contention that one party's signature on a contract can qualify as a subscribing witness to the other party's signature.

*Interpretation of the Agreement*

The Wife argues that the prenuptial agreement unambiguously and specifically excludes the decedent's homestead from its application pursuant to paragraph 2 of the agreement. The Children agree that the prenuptial agreement is unambiguous but contend that paragraph 2 applied only during the decedent's life, and that instead the Wife waived any interest in the home in paragraph 10 of the agreement.

"A trial court's interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015) (citation omitted).

"When interpreting a contract, a court should give effect to the plain and ordinary meaning of its terms." *Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So. 2d 827, 829 (Fla. 4th DCA 2004). "Words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable." *Id.* (quoting *Thompson v. C.H.B., Inc.*, 454 So. 2d 55, 57 (Fla. 4th DCA 1984)). Moreover, when certain provisions of a contract appear to conflict, "it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008) (quoting *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006)).

Paragraph 2 of the agreement states:

> 2. RESIDENCE. It is intention of the parties that the *residence* presently owned by [the decedent] *located at 601 NW 12 Street, Delray Beach*, Florida *shall not be affected by this Agreement.*
>
> The expenses associated with the maintenance of the residence shall be paid as follows:
>
>> a. Mortgage payments shall be made by [the decedent].
>> b. Payment of all real estate taxes shall be made by [the decedent].
>> c. Insurance premiums for such residence shall be paid by [the decedent].
>> d. _____ [blank line in original].

8

(emphasis added).  Pertinent to this appeal, paragraph 10 states:

>10. DEATH.  Each party agrees that if he or she survives the death of the other, such party will make no claim to *any part of the real or personal property of the other.*  In consideration of such promise and in consideration of the contemplated marriage, each party knowingly, intentionally, and voluntarily waives and relinquishes any right of . . . *homestead,* inheritance, descent, distributive share, or other statutory or legal right, now or later created, to share as surviving spouse in the distribution of the estate of the other party.  The parties agree that it is their mutual intent that neither shall have or acquire any right, title, or claim in and to *the real or personal property of the other* by virtue of the marriage.  The estate of each party in the property now owned by either of them, or acquired after the date of marriage by either of them, shall descend to or vest in his or her heirs at law, legatees, or devisees, as may be prescribed by his or her Last Will and Testament or by the laws of the state where the decedent was domiciled at the time of death, as through no marriage had taken place between them.

(emphasis added).  Additionally, the agreement contains multiple words and phrases indicating "what's mine is mine, what's yours is yours, and what's ours is ours," as summarized by the probate court.

We agree with the Wife's argument that paragraph 2's language describing a specific parcel of real property by address and stating the described property "shall not be affected by this Agreement" unambiguously exempts it from the agreement.  For three reasons, we are not persuaded by the Children's argument that paragraph 2's provision for the payment of expenses indicates that paragraph 2 was only to be effective while the decedent was alive: (1) the language "shall not be affected by this Agreement" would be totally superfluous and without meaning, given the listing of the specific property in both paragraph 2 and the multiple instances of "what's mine is mine, what's yours is yours, and what's ours is ours" language; (2) at least two of paragraph 2's listed expenses would continue to be payable after the decedent's death (assuming the decedent paid off the mortgage during his lifetime); and (3) paragraph 2's listed expenses do not include maintenance expenses for the house and yard (if the expense language's intent was to demonstrate

9

paragraph 2 only pertains to decedent's lifetime, it makes no sense that key expenses would be omitted).[2]

"[T]he court's task is to apply the parties' contract as written, not 'rewrite' it under the guise of judicial construction." *Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 4 (Fla. 4th DCA 2019) (alteration in original) (quoting *City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 (Fla. 4th DCA 2017)). "In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract." *Id.* (quoting *Sugar Cane Growers Coop. of Fla., Inc. v. Pinnock*, 735 So. 2d 530, 535 (Fla. 4th DCA 1999)). "An interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." *Id.* at 5 (quoting *Herian v. Se. Bank, N.A.*, 564 So. 2d 213, 214 (Fla. 4th DCA 1990)).

The Children's construction of paragraph 2 would render the words "shall not be affected by this Agreement" meaningless. The Wife's construction does not. Therefore, we reverse the probate court's determination that the Wife waived all her spousal interests in the real property described in paragraph 2 of the agreement. We remand the case to the probate court to determine the extent of the Wife's interest in that asset alone. Because further proceedings as to the Wife's interest in the paragraph 2 property are necessary, we also vacate the final orders pertaining to that property, which may or may not contain errors in the legal description.

*Conclusion*

We conclude that the trial court properly applied Florida law, rather than Massachusetts law, in determining the overall validity of the prenuptial agreement because a significant asset involved in the agreement was the decedent's homestead. Florida has a strong public policy to protect the homestead rights of spouses and children, thus the public policy exception to the *lex loci contractus* doctrine applies in this case.

We further conclude that the prenuptial agreement specifically

---

[2] Because both sides contend on appeal that paragraph 2 is unambiguous, our analysis accepts that assertion. We therefore treat the reference to "homestead" in paragraph 10 to envision the possibility before the marriage that the decedent may possibly change his primary residence after the marriage.

exempted from its application the specifically described real property which was the decedent's homestead at the time of his death.

The question of what law controls the overall validity of a prenuptial agreement is separate from how a valid prenuptial agreement controls the disposition of property.

For the above reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part and remanded.*

GROSS, J., concurs.
WARNER, J., concurs specially with opinion.

WARNER, J., concurring specially.

I concur with the majority opinion but would go further and simply recede from *In re Estate of Nicole Santos*, 648 So. 2d 277 (Fla. 4th DCA 1995), as to the application of *lex loci contractus* to marital agreements. I think the significant relationship test should be used to determine which jurisdiction's law should apply to the interpretation of all such agreements, as I argued in my dissent in *Santos*. The best way to avoid a conflict of laws issue, however, is for the parties themselves to designate in their agreement what jurisdiction's law is to apply.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**